IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MATTHEW D. SARVER,** : | | **CIVIL ACTION** |
|        **Plaintiff,** : | | |
| : | | |
| **v.** : | | |
| : | | |
| **THE SHERWIN WILLIAMS CO.,** : | | |
|        **Defendant.** : | | **NO: 12-02702** |

**M E M O R A N D U M**

**Stengel, J.**                                                                                                                                **July 31, 2013**

Matthew Sarver, a high school senior, slipped and fell on his way home from school on a sidewalk outside M.A.B. Paints, which is owned by The Sherwin-Williams Co. He sustained injuries and filed this action. Defendant filed a motion for summary judgment, which I will deny.

**I.      Background**

On January 29, 2009, at about 3:15 p.m., Matthew Sarver (Plaintiff) slipped and fell while walking on the sidewalk immediately adjacent to M.A.B. Paints' parking lot. Plaintiff contends that ice and snow covered the sidewalk.

On the day before the fall, John Helman plowed M.A.B. Paints' parking lot and surrounding sidewalks. Mr. Helman, who was hired by The Sherwin-Williams Co. (Defendant), testified that he "cleared the walkways, but in that snow event, it rained heavily at the end of the snow storm." Helman Dep. at 15. He stated that after he cleared the parking lot and the walkways, he "salt[ed] the walkways and parking area." Helman Dep. at 17. He also stated that he salts using a "spreader" and that he salts high traffic areas and areas that may have been missed by hand. This process takes at minimum five

fifty-pound bags of salt, which totals 250 pounds. He testified at his deposition that he uses this technique on "every job" and applies salt even if ice is not present. Helman Dep. at 22-25.

Plaintiff described the weather conditions on the afternoon of the incident "as clear, air was cold, but cloudy out, and there was ice and snow pretty much everywhere." Sarver Dep. at 39.[1]  Regarding the sidewalks, Plaintiff testified that "outside of the school, the sidewalks were clear . . . on the side where the school was. On the opposite side, there was ice all over the place. And . . . down the road, it was clear. After that, there were patches of ice and snow all over the place." Saver Dep. at 45.

Plaintiff alleges that the ice on the sidewalk where he fell was thick, lumpy, and contained hills and ridges, and that when he stepped on the ice, he lost his balance and footing and fell to the sidewalk. He described the ice stating, "to say there were bumps is a little inaccurate. There was more dips along the ground, along the ice, and the bumps were basically the highest points for that ice, but sort of as if somebody had just been sliding their foot across the ground . . . causing . . . some of the ice to melt . . . . But that's pretty much how the bumps were, just somewhat spread out, but mostly just elongated." Sarver Dep. at 59. Plaintiff also stated that the bumps were about an inch, and he did not notice any salt on the sidewalk but his "awareness wasn't really the best at the time." Sarver Dep. at 60.

---

[1] Plaintiff testified that the morning of the incident "it was snowing a bit." Sarver Dep. at 39. The hourly precipitation table for the day of the incident shows no hourly precipitation recorded at any time and no snowfall or water equivalent measured for the entire day. Doc. No. 14 at 4.

After the fall, Mr. Thomas J. Duddy, M.A.B. Paints' manager, came out to assist Plaintiff.  Mr. Duddy testified in his deposition that the employees "would throw down salt here and there to make it passable."  Duddy Dep. at 25.  He stated that he knew Daniel Diaz "had put salt down in the morning" and that he was "pretty certain" he saw salt in the area of the accident.  Duddy Dep. at 25.  Although Mr. Duddy asked, Plaintiff refused an ambulance and wanted to be taken home.  Mr. Duddy then placed Plaintiff in the back of his vehicle and drove him home where Plaintiff's mother, Rose Deifer, was also living at the time.

Ms. Deifer testified that Mr. Duddy carried Plaintiff into the house and told her "I apologize, Rose.  I was on vacation, and I noticed that the stuff was not salted."  Deifer Dep. at 44.  Mr. Duddy testified at his deposition that he was not on vacation prior to the incident and had been working in the store.  He does not remember the specific conversation he had with Ms. Deifer, but he recalls that he explained what happened when he dropped Plaintiff off at home.

Plaintiff alleges that Defendant negligently maintained the sidewalk in an unsafe condition for an unreasonable length of time, failed to remove or treat the ice with de-icing agent, failed to post any warnings or notices, and failed to make regular and reasonable inspections of the sidewalk.[2]  As a result of the fall, Plaintiff sustained significant injuries.

---

[2] Plaintiff claims that Defendant failed to remove snow and ice from the sidewalk as required by the ordinance of the City of Allentown, Article 741.0.

**II.     Standard of Review**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A factual dispute is "material" only if it might affect the outcome of the case. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party. <u>Id.</u>

A party moving for summary judgment always bears the initial burden of informing the Court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing relevant portions of the record, including depositions, documents, affidavits, or declarations, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support the fact. Fed.R.Civ.P. 56(c). Summary judgment is therefore appropriate when the non-moving party fails to rebut the moving party's argument that there is no genuine issue of fact by pointing to evidence that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp.</u>, 477 U.S. at 322; Harter v. GAF Corp., 967 F.2d 846, 852 (3d Cir.1992).

Under Rule 56, the Court must draw "all justifiable inferences" in favor of the

non-moving party. Anderson, 477 U.S. at 255. The Court must decide "not whether ... the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Id. at 252. The nonmoving party cannot avert summary judgment with speculation or conclusory allegations, such as those found in the pleadings, but rather, must present clear evidence from which a jury can reasonably find in its favor. Ridgewood Bd. of Educ. v. N.E. for M.E., 172 F.3d 238, 252 (3d Cir.1999). Finally, in reviewing a motion for summary judgment, the Court does not make credibility determinations and must view facts and inferences in the light most favorable to the party opposing the motion. Siegel Transfer v. Carrier Express, 54 F.3d 1125, 1127 (3d. Cir.1995).

**III. Discussion**

Pennsylvania law does not impose an absolute duty on a property owner to keep his or her premises completely free of snow and ice at all times. Rinaldi v. Levine, 406 Pa. 74, 176 A.2d 623, 625 (Pa. 1962); see also Beck v. Holly Tree Homeowners Assn., 689 F. Supp. 2d 756, 762 (E.D. Pa. 2010); Mack v. AAA Mid-Atlantic, Inc., 511 F. Supp. 2d 539, 546 (E.D. Pa. 2007). The "hills and ridges" doctrine "protects an owner or occupier of land from liability for generally slippery conditions resulting from ice and snow where the owner has not permitted the ice and snow to unreasonably accumulate in ridges or elevations." Helbing v. Wyndham Hotels & Resorts, LLC, No. 10-1117, 2011 U.S. Dist. LEXIS 13502, at *7 (M.D. Pa. Feb. 11, 2011) (quoting Morin v. Traveler's Rest Motel, Inc., 704 A.2d 1085, 1087 (Pa. Super. Ct. 1997)).

In order to recover for a fall on an ice-covered surface, if the doctrine is applicable, a plaintiff must prove: (1) that snow or ice had accumulated on the sidewalk in ridges or elevations of such size and character as to unreasonably obstruct travel and constitute a danger to pedestrians traveling thereon; (2) that the property owner had notice, either actual or constructive, of the existence of such conditions; and (3) that it was the dangerous accumulation of snow and ice that caused the plaintiff to fall. Rinaldi, 176 A.2d at 625. The hills-and-ridges doctrine applies with equal force to both public and private spaces, see Wentz v. Pennswood Apartments, 518 A.2d 314, 316 (Pa. Super. 1991), and has been applied to business invitees, Wilson v. Howard Johnson Restaurant, 421 Pa. 455, 219 A.2d 676 (1966).

Defendant argues that Plaintiff failed to provide evidence that snow or ice accumulated in the requisite ridges or elevations and failed to show that Defendant had actual or constructive notice of such accumulations. Plaintiff counters that the hills-and-ridges doctrine is inapplicable because the accumulations of snow and ice that allegedly caused Plaintiff to slip were not "natural accumulations," but rather were the result of Defendant's plowing or snow removal. Alternatively, Plaintiff argues that even if the hills-and-ridges doctrine applies, there are genuine disputes of material fact.

The protection stemming from the hills-and-ridges doctrine is predicated on the assumption that ice and snow are a "natural phenomena incidental to our climate," Rinaldi, 176 A.2d at 625, and that "[t]o require that one's walks be always free of ice and snow would be to impose an impossible burden in view of the climatic conditions of this hemisphere." Morin v. Traveler's Rest Motel, Inc., 704 A.2d 1085, 1087 (Pa. Super. Ct.

6

1997).  Hence, the doctrine only applies in cases where the snow and ice at issue are the result of "an entirely natural accumulation, following a recent snowfall."  Bacsick v. Barnes, 234 Pa. Super. 616, 341 A.2d 157, 160 (Pa. Super. 1975); see also Tameru v. W-Franklin, L.P., No. 07-1965, 2008 U.S. Dist. LEXIS 68770, at *10-11 (E.D. Pa. Sept. 11, 2008).  The doctrine does not apply where the hazard is a localized patch of ice, rather than the result of generally slippery conditions prevailing in the community.  Tonik v. Apex Garages, Inc., 442 Pa. 373, 275 A.2d 296 (Pa. 1971); Williams v. Shultz, 429 Pa. 429, 240 A.2d 812 (Pa. 1968).  Nor does it apply where the icy condition is "of artificial origin," caused by the defendant's neglect.  Williams v. United States, 507 F. Supp. 121, 123 (E.D. Pa. 1981); Bacsick, 341 A.2d at 160 (finding the hills-and-ridges doctrine inapplicable where a plaintiff slipped and fell on a snow bank "of artificial origin" that had been deposited as the result of street plowing).

There is a genuine question as to what extent individuals intervened at the store to clear snow and ice prior to Plaintiff's fall.  An entire night passed between the last significant precipitation in the area and the incident.  The hourly precipitation table for the day of the incident shows no hourly precipitation recorded at any time and no snowfall or water equivalent measured for the entire day.  Doc. No. 14 at 4.  See Goggans v. U.S., CV. No. 87-7423, 1990 U.S. Dist. LEXIS 2063, 1990 WL 18873, at *1 (E.D. Pa. Feb. 26, 1990) (holding that fifteen hours was sufficient time to clear the snow, thus preventing the application of the "hills and ridges" doctrine).  Defendant argues that M.A.B. Paints employees spread salt that morning, but Mr. Duddy testified that he did

7

not witness any of the employees spread salt on the sidewalk and that it was not a routine business practice to do so.

Plaintiff contends the ice accumulated on the sidewalk in ridges or elevations of such size and character as to unreasonably obstruct travel and constitute a danger to pedestrians.[3] In his deposition he described the conditions of the sidewalk as "dips along the ground, along the ice, and the bumps were basically the highest points for that ice, but sort of as if somebody had just been sliding their foot across the ground . . . causing . . . some of the ice to melt" Sarver Dep. at 59. Plaintiff also stated that the bumps were about an inch and that he did not notice any salt on the sidewalk. Plaintiff's deposition testimony is not inconsistent with the conclusion that the conditions that caused his fall were of the type and size required by the hills-and-ridges doctrine. Defendant notes that Plaintiff's characterization of the ice is inconsistent; however, because portions of the deposition testimony on the condition of the ice can be read to support the arguments of both parties, a genuine issue of material fact exists, which requires resolution by a neutral fact finder.

Further, Plaintiff argues that the snow removal, in fact, caused the icy conditions, as in Bacsick and Harvey. In Harvey v. Rouse Chamberlin, Ltd., 2006 PA Super 130, 901 A.2d 523 (Pa. Super. Ct. 2006), snow had fallen in the area from January 20, 2001, to the early morning of January 21, 2001. Id. at 525. After it had stopped snowing and the roads had been plowed by a company employed by the defendant, the plaintiff decided to

---

[3] Plaintiff also argues that Defendant did not comply with the local ordinance. However, even a violation of an ordinance is not *per se* negligence and Plaintiff must still pass the test under the hills-and ridges-doctrine. See Reid v. City of Phila., 904 A.2d 54, 57, 60 (Pa. Commw. 2006) (plaintiff still required to satisfy hills-and-ridges doctrine even where defendant violated Philadelphia snow ordinance).

8

take a walk.  Id.  Some portions of the road were covered with packed snow from the snowplows and there were patches of cleared asphalt.  Id.  As the plaintiff approached the sidewalk in front of a home, she noted that there was snow on the sidewalk and decided to walk in the road, which appeared to be clear and dry.  Id.  While walking in the road, the plaintiff slipped and fell on black ice.  Id.  The court found that the "hills and ridges" doctrine did not apply because "the evidence introduced by [plaintiffs] . . . suggest[ed] that the condition of the land was influenced by human intervention.  In other words, given [the contractor's] interaction with the snow via snow plowing, the ice . . . could not have been 'the result of an entirely natural accumulation.'"  Id. at 527.  Plaintiff in this case makes similar allegations that the alleged ice or dangerous condition was caused or impacted by Defendant's conduct.

Nevertheless, the ambiguity in the record evidence as to the condition of the accumulations, and the extent to which Defendant intervened to remove any accumulations, raise genuine questions of material fact, which preclude the court from answering the threshold issue of whether the hills-and-ridges doctrine applies.[4]  Although Defendant seems to argue that the precipitation on the day of the fall caused the ice where the Plaintiff slipped, Plaintiff has presented evidence that there was no precipitation the day of the incident, so there is the possibility that the ice was already there and the

---

[4] For example, Defendant asserts that Plaintiff cannot show that it was aware of the existence of any dangerous condition caused by the ice.  However, Defendant argues that on the morning of Plaintiff's fall, employees put salt on the parking lot and walkway.  Conversely, Ms. Deifer testified that Mr. Duddy carried Plaintiff into the house and told her "I apologize, Rose.  I was on vacation, and I noticed that the stuff was not salted."  Deifer Dep. at 44.  While it is not clear that spreading ice can, or should, be construed as notice to the defendant that the ice constituted a dangerous condition, that testimony and argument present a genuine issue of material fact.  Hence, summary judgment is inappropriate.  Anderson v. Liberty Lobby, Inc., 477 U.S. 251, 255 (1986); Turner v. Schering-Plough Corp., Nos. 89-5214, 89-5534 (3rd Cir. April 23, 1990).

Defendant failed to remove it in the course of maintaining the parking lot that day. Therefore, I find that a question remains as to whether Plaintiff's fall was caused by the natural accumulation of ice following a recent snowfall, or a dangerous icy condition which was allowed to remain for an unreasonable length of time. This question can only be answered by a jury. I will therefore deny summary judgment on these grounds.

## IV.    Conclusion

For the reasons stated above, I will deny the Defendant's motion for summary judgment.

An appropriate Order follows.